HTC Corporation v. Cellular Communications Equipment. Again, Mr. Miller. Good morning, Your Honors. If it please the Court, we believe the Board committed three distinct errors in this case. Again, the Board has given us an implicit construction of the term message that we believe to be an error. They didn't describe, excuse me, the second error is we believe that that construction was misapplied with respect to Baker. And then the Board's analysis... Did the parties request construction of the term message? No. In fact, this came up in the first instance during oral argument. So we didn't believe that it needed to be construed. It's a fairly common term. But in the oral argument, the patent owner raised the issue and provided no less than five different constructions during the argument. We didn't believe it needed to be construed, and today we don't. But the limitations that they imported into message in their analysis of the prior art illustrate that they adopted a construction that's completely inappropriate. Specifically, the Board relied on the patent owner's statement about what messages are and the concept of single-frame messages versus multi-frame messages. And that indicates the heart of what the argument here is. So any construction of message that would exclude a single-frame message is inappropriate. I don't think that's what they did. No, they didn't. They just said it is not the case that every frame is always a message. Absolutely. There can be single-frame messages. Absolutely. And as I remember, tell me if I'm wrong, what they said about Baker is that Baker shows something happening at the beginning of a frame. Absolutely. But it doesn't either say or necessarily require under inherency for that frame to be a message. Yes, and that's at the heart of the error that they're making here in claim construction, because it isn't relevant what happens at the beginning of the fourth frame of the 15-frame message. That has no bearing on the claims whatsoever. Now, the teaching of the specification also indicates that a message can be a continuous transmission of data. At Appendix 31, Column 3, Lines 8 through 11, messages are described as beginning at definite transmission intervals in a UMTS system, and that's at frame boundaries. And all the parties agree that UMTS messages begin at frame boundaries. But nothing in the specification would support this notion of it having a definite beginning, a definite ending, and being... Well, there's no ending requirement, right? It's just a beginning requirement. Yes, one of the definitions that was offered by the patent owner at the oral argument included an ending. We completely agree that that shouldn't be a concept here. I don't see that the board required an ending. It just talked about a beginning. What happens at the beginning of a message? Absolutely. And the beginning of the message, Your Honors, is the only time period that matters. And by their analysis of, and I'll quote, at Appendix 11 and 12, the board specifically relied on this analysis when it said, specifically the patent owner identifies evidence indicating that a message transmission may include multiple frames and time slots. Thus, according to the patent owner, the boundary of the frame or time slot immediately proceeding to the ac-nac in Baker is not necessarily the start of a message transmission. And they explicitly agreed with that analysis. And that is the heart of the error. It doesn't matter what happens interior to a multi-part message. It merely matters what happens at the beginning of a message transmission. And Baker explicitly teaches that the determination is made at the beginning of every frame boundary, which necessitates that if messages begin at frame boundaries and all the parties agree they do, then Baker teaches the beginning of a message transmission. And this can be seen at Appendix 909 and 910 with reference to Figure 4. The discussion about UMTS messages and messages generally starting at frame boundaries can be found at Appendix 716, lines 16 through 20, 720, lines 15 through 18, and the patent owner's initial response at page 25. So the real central issue here is I believe the board just got derailed by a persuasive argument made by a patent owner that said multi-frame messages, what happens in the interior frames? And since Baker doesn't really describe that, then it doesn't anticipate. I think I've heard you say, and I may get this wrong, that Baker teaches setting the, what's it, the headroom? Making the determination is the plain language. At the beginning of every single frame? It makes a determination at every time slot. Oh, so not at every frame. Because every frame begins with a time slot and Baker explicitly states time slot or frame boundary in Baker, then it does make the determination of whether or not there will be an adjustment at every frame boundary. So moving on just briefly to the teachings of Reed, unless your honors have further questions. With respect to Reed, the analysis really turns on whether or not that Reed describes the use of a single headroom for the device or it teaches multiple headrooms. Now the patent owner argued that this is a teaching away once again, and we believe that the board kind of latched on and adopted that. Unfortunately, that's just not what Reed teaches. So Reed teaches that with two streams you have an additional degree of freedom where one stream can be deprioritized with respect to the other. That deprioritization is always a comparison. One is more important than the other. And you can find this at appendix 906, column 14 through 21. So back to the key issue. Is there a single headroom for the device and this deprioritization is happening within that headroom? And we believe that that's exactly what Reed is teaching. If we look at the same appendix, column 59 through 65, it says after the base station obtains the mobile station available transmit power, the base station determines the data rate for the mobile station based on the headroom. Now I have a couple of ellipses in there that's taken pieces of that quote, but it is within context. And the mobile station is the headroom, singular, is determined by the base station based on the mobile station's headroom. Again, at same column, lines six through eight, the mobile station is capable of modifying its headroom. We think that the only reasonable reading of this is the mobile station has a headroom. When it's going to be transmitting multiple data streams, it can deprioritize one data stream in favor of another within that headroom. The headroom can be assigned from the base station as described, or the mobile station can modify its headroom. But again, both of these instances, headroom is in the singular, not in the plural. A lot of the patent owner's teaching away argument is that Reed doesn't disclose the max power associated with two codes is often less than one, and you can find that at appendix 498 and 99. This really isn't relevant to the claims. There's an express definition of headroom at column 2, 19 through 23, and it makes no mention of reaching max power when two codes are used. The claims make no mention of reaching max power for the two codes, and the specification specifically states that this phenomenon is not universal, and you can find that at column 5, 1 through 5. So the assertion that Reed teaches away from a single headroom for the device is just inaccurate. In fact, it's the only reasonable interpretation of Reed, is that the mobile station has a headroom that can be set by either the base station or the mobile, and within that headroom, the mobile station is going to prioritize or deprioritize individual streams relative to each other when a high-priority data stream is to be sent. Do your honors have any further questions? Do you want to save the rest of your time, Mr. Warren? Thank you. Mr. Bumgartner? May it please the Court. Barry Bumgartner here for CCE. Let me just pick off. So when Baker discloses adjusting the power at the beginning of a frame, and the beginning of a frame is a message, would that infringe this patent? No, it would not, Your Honor. Why not? So what Baker discloses, and I'll get to your question, that you can make power adjustments at the time slot boundary before an act-and-act message. And understanding that a frame boundary is just every 15 time slots, there's an artificial demarcation that that's the beginning of a frame as well. So just like minutes on a clock, every 60th minute is also the beginning of an hour, but it's also the top of the hour as well, but it's the beginning of a new minute. So with respect to your honors question about the beginning of a frame, the beginning of a frame is not necessarily the beginning of a message. No, it's not necessarily, but my question is, when it is the beginning of a message, would it infringe? If there was a message that was at the beginning of a frame, yes, I think that would be within the scope of the claims, but having to look at the rest of the limitations of the claims. But the key here is at the beginning of a message. That's what is completely missing in Baker about any disclosure of the beginning of a message. But everybody agrees that these time slots in Baker include, what is it, 10 milliseconds? And everybody agrees, and the patent itself says that messages can be 10 milliseconds long, right? That's correct, Your Honor. So why doesn't Baker disclose making adjustments with respect to messages that are 10 milliseconds long? Baker discloses that you can make these adjustments really at any time. It doesn't disclose, so it's like you can make this power adjustment at any time. But it discloses making the adjustment at the beginning of a 10-millisecond time slot, right? It discloses that you can make an adjustment at a time slot boundary, which every 15th time slot boundary is the beginning of a frame boundary as well. So why isn't that disclosing making an adjustment at the beginning of a message that corresponds to a 10-millisecond time slot? Because that frame there, that period when Baker's making an adjustment, there is no message involved. What do you mean there's no message involved? Some messages are 10 milliseconds. So when you have a 10-millisecond time slot, that's a message, right? No, that's not correct, Your Honor. What I'm hearing you saying, Your Honor, is that every 10-millisecond frame is a message. No, I'm not saying that. I'm saying that when a message is 10 milliseconds long, Baker makes an adjustment at the beginning of the message. Correct? I would say you're incorrect, with all due respect, Your Honor. Well, why am I incorrect? Because there are no messages in Baker. You mean because it doesn't use the word message? Not because it doesn't use the word message, because there are no messages. It's simply picking an arbitrary point in time to make a power adjustment. Sometimes it says it can be at the beginning of a frame or at any other time slot. So it doesn't have to be at the beginning of a frame. It could be the first or second or third time slot. No, but it talks about doing it at the beginning of a frame, and there are messages, maybe many of them, which are 10-millisecond messages. So in those circumstances, it makes an adjustment at the beginning of a message, right? And that's where it doesn't – Baker does say, Your Honor, I'm trying to address this, Baker does say that you can make adjustments at any time, including at the beginning of a frame. I agree with that. But what Baker does not disclose or teach to anyone is why you would make that adjustment. And so if a message – Well, what does the claim have to do with why you're doing it? It has to do with doing it. At the beginning of a message transmission. So when there's a beginning of a message transmission in Baker, there's an adjustment made at the beginning of the message. And I understood you to say earlier that that would be an infringement. If there was a message to be transmitted in Baker, but that's where I – it's like it's doing it when a message is to be transmitted. That's the key in what we think is missing in Baker. At Baker, we say, yes, it says it can do it really at any point in time. It can do it at frame boundaries or any of the 14 time slot boundaries after that frame boundary until the next frame boundary. It can do it at any time before there's an act-and-act transmission. So what we say is – but that just picking an arbitrary point in time doesn't disclose this claim limitation where it says – But why does it have to be searching – why does it have to say it's doing it because that's the beginning of a message when, in fact, it is doing it at the beginning of a message? And that's – and, Your Honor, I'm really not trying to be difficult, but we feel it's very important to our case that it's – Baker says you can do it at any time, and so to the extent that a message is being transmitted at a particular time and then you do this, you set a power headroom, then, okay, you're getting closer to the claim, but this is an anticipation, and the claim discloses you have to make an adjustment at the beginning of a message. And in Baker, there's no discussion about transmitting messages. And we said just picking an arbitrary point in time doesn't get you to the particular point of time disclosed in the patent where you make this adjustment at the beginning of a message transmission. There has to be a message to be being transmitted, not just some arbitrary point in time, and that's what we feel the key element missing in Baker is. It just says you can do it whenever before this act-and-act that they never alleged to be a message. You just pick a time and you can do it. That's very different in our view of saying when you have a message to transmit, and the patent explains why it's important to do it at the beginning of the message, but when you have a message to transmit, that's when you do it, not just whenever. Go ahead. That's a somewhat nuanced point, Your Honor, but I think it's very important. So with respect to opposing counsel, some of his points, the errors he believes, the message construction, it's certainly our view that the board never construed message. They didn't construe message. What they found was, and I believe it was read, and this is on A12, thus according to the patent owner, the boundary of a frame or time slot immediately preceding an act or an act is not necessarily the start of a message transmission. We agree with the patent owner. So the board, I don't believe the board was construing message here. There's certainly no formal construction, and as late as the argument in front of the board, the board specifically asked Petitioner, do you need a construction of message? They said, no, we don't need that construction, and I don't believe there's any construction set out here. What they said was that the point in time they pointed to in Baker, in Figure 4 Baker, that that point in time is not necessarily the beginning of a message. Because, again, as we keep saying, and I've said it. But it infringes, it would infringe when it is the beginning of a message. If you're, and that's where we get into the claims, if you're making an adjustment at the beginning of a message transmission, then, yes, that starts to fall within the claims. But Baker, again, in anticipation, it never discloses the start of a message transmission. That's what we believe is missing. It says you can make this adjustment at any time, but it's not, it doesn't recognize the importance and it doesn't disclose that you do this at this specific time when you have a message to transmit. And that's not inherent? No. No, Your Honor. So it's the difference between the anticipation world in which something needs to be expressly taught or be inherent, and, on the other hand, a particular instance that might be covered by the prior art could infringe. But if the aspect of that instance is neither taught nor inherent, it's not anticipatory. That was certainly the board's rationale, Your Honor, to say maybe sometimes it is, maybe sometimes it isn't, but that's not inherency. Again, you know, to get from A to C, for B to be inherent, you necessarily have to pass through B. And they say that's not what's shown here, that maybe sometimes the beginning of a frame is the beginning of a message. That's not maybe, that it is sometimes the beginning of a message. Sometimes it is. We've said that messages are, they begin to be transmitted at the beginning of a frame. But not every frame is the beginning of a message. And we showed examples, I mean, a message can, messages aren't always transmitted. Messages may not, you know, you may go some period of time with no messages being transmitted, and Baker performing its power adjustments anyways to transmit an act or an act. A message can be, the message is disclosed in the pack, can be eight frames long. So we use the example, eight frames is 120 time slots, so only one out of 120 time slots will be the beginning of the message. When there's no message being transmitted, and this is, I guess, more of a how does this work question about Baker, what's the, what's being act or an act? It would have been a previously transmitted message, but that's not really, that's what you're acknowledging the receipt of a downstream message to say, tell the base station I received the message or I did not. So, but it's to inherency that just any given time slot or any given frame boundary is not necessarily the beginning of the message. And I think sort of the big picture view is that, you know, one of ordinary skill looking at Baker doesn't come away with any appreciation of why or how or the reasons that you want to make this power adjustment at the beginning of a message. To me, what Baker says is you can make this. But the claims don't say what there's a purpose requirement. You're correct, Your Honor, and I'm not trying to read something into the claims. I'm just, again, the big picture is there's no teaching about why or anything about doing something at the beginning of a message. It's just, it's basically you can do this at any time, and the board's analysis reflects that. They say it doesn't explicitly disclose because there's nothing in there about messages, and then it doesn't inherently disclose. The board recognized that sometimes the beginning of a frame may line up with the beginning of a message, but not necessarily. It's not always, and that's not enough. Mere probabilities or possibilities, that doesn't get you to inherency. So with respect to Reed, and I'll move on to that, Reed, I think it's, we just have different readings of the disclosure of Reed. I think that's a very factual dispute here as to what the teachings of Reed are. Patent owner and the board have one view. Petitioner has, appellant has another. And I'll note just that the board did find that petitioner's expert took different positions on this. That on one hand, in his first declaration, he said each of these data streams has different headrooms, or can be adjusted independently. In a second declaration, he said, well, they're really managed together. So when we start looking at substantial evidence, their expert itself is offering different views on this key aspect of Baker. And then with respect to some of the portions cited by opposing counsel from Reed about a single headroom, the board specifically found that those discussions were a different embodiment, a different embodiment of the invention discussed in Reed. The embodiment where there was two data streams that was specifically called out as a different embodiment. So I think we're mixing apples and oranges there when we look at certain sections of Reed to say it discusses a single headroom, single headroom. Again, the board specifically found in its decision that that was a different embodiment than the embodiment they cited to for the proposition that there are two data streams. I think this is a good time to stop unless your honors have any additional questions. Okay. Thank you, Mr. Bumgarner. Mr. Moore. Just a few points, Your Honor. Something came up during the last argument about Baker, and specifically the patent owner stated that Baker doesn't teach messages. Baker doesn't teach messages? Right. Now, this goes back again to the understanding of what a message is and the board's implicit construction of message. What Baker teaches is this, and this can be found at column three, I believe, from memory, about line 30 through 40. What Baker teaches is that the control channel is transmitted at all times continuously. Now, control messages would be put into the appropriate time slots as the control channel is being transmitted. The data channel is only transmitted when there is data to send, and the reason that's important is it goes back to what is a message. The 174 teaches that a message can be a continuous transmission of data. Baker teaches a continuous transmission of data in its data channel. So I think that's important. Now, if we go to this concept that was fairly determinative at the board of single message transmission of a single duration or multiple frame durations, with multiple frame durations there are obviously two embodiments, right? That frame is either the start of a message or it isn't. The board's analysis completely read out the embodiment of the instance where it is, just as Your Honor noted. There are instances. This isn't a probability. This is a certainty. All messages in UMTS begin at frame boundaries. Baker makes a determination, sometimes it'll adjust, sometimes it won't, at all frame boundaries. It's a certainty that Baker teaches adjusting at message transmission time frames. Now, with respect to the argument made in response to Reed, one of the things that I think is really compelling here is a statement that counsel made that it teaches two streams. Two streams, one headroom. This is all that we're saying, is that Baker explicitly teaches two data streams and the device has one headroom. Now, with the board's finding in Dr. Williams, I do need to address this because I believe this is a little out of context. What they found was that in Dr. Williams' initial discussion in his declaration, he talked about independently adjusting the headrooms on these different data streams relative to each other. Then he went on in his next declaration to refer to it as a coordinated effort. We don't believe that to be inconsistent at all. In fact, we believe that exactly to be the teaching here, that the deprioritization of one data stream over the other that is taught in the specification is exactly what we're talking about. Yes, each one is going to be transmitted at a different power, and yes, one is going to be more important than the other, but there's an explicit teaching that the device has one headroom. Within the scope of that headroom is how these transmission powers are managed. Okay, anything else? If the court has no further questions, I'll cede the time. Okay, thank you, Mr. Williams. I'll counsel the case this evening.